POULTRYLAND INC. *et al. v.* ANDERSON *et al.*

No. 15398.   APRIL 2, 1946.

554

*Joe K. Telford* and *Wheeler, Robinson & Thurmond,* for plaintiffs in error.

*B. Frank Whelchel* and *Hammond Johnson,* contra.

DUCKWORTH, Justice. ■ While the bill of exceptions assigns error on the ruling on certain special demurrers, the objections are not argued in the brief of counsel for the plaintiffs in error or insisted upon, and will, therefore, not be considered.

"A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary reasonable man." Code, § 72-101. "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals." Section 72-102. In numerous decisions of this court a nuisance per se has been defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. See *Washington Seminary Inc.* v. *Bass,* 192 *Ga.* 808, 816 (16 S. E. 2d, 565), and citations. Nothing that is lawful in its erection can be a nuisance per se. *Bacon* v. *Walker,* 77 *Ga.* 336 (a). See also *Long* v. *Elberton,* 109 *Ga.* 28 (34 S. E. 333, 46 L. R. A. 428, 77 Am. St. R. 363). The mere erection of the plant here described is not without more a nuisance per se, and the allegations of the petition do not show it

to be such. But is a nuisance per accidens alleged? "Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings." 46 C. J. 649, § 5. In *Simpson* v. *Dupont Powder Co.*, 143 *Ga.* 465, 467 (85 S. E. 344, L. R. A. (1915E, 430), the following from Windfall Mfg. Co. *v.* Patterson, 148 Ind. 414 (47 N. E. 2, 37 L. R. A. 381, 62 Am. St. R. 532), is quoted with approval: "But a business lawful in itself can not be a nuisance per se, although, because of surrounding places or circumstances, or because of the manner in which it is conducted, it may become a nuisance. . . Others [certain businesses or structures], as slaughter-houses and certain foul-smelling factories, are so offensive to the senses that they must be removed from the limits of cities and towns, and even from the neighborhood of family residences. Yet there must be some proper place where every lawful business may be carried on without danger of interference on the part of those who in some slight degree may be annoyed or endangered by the nearness of the objectionable occupation." "A rendering plant is not a nuisance per se, but it may be so conducted or operated as to constitute a nuisance. It has been held [Rhoades *v.* Cook, 122 Iowa 336, 98 N. W. 122] that such plant is prima facie a nuisance." 46 C. J. 722, § 258. After stating in *Benton* v. *Pittard*, 197 *Ga.* 843 (31 S. E. 2d, 6, 153 A. L. R. 968), that "A thing that is lawful and proper in one locality may be a nuisance in another. In other words, a nuisance may consist merely of the right thing in the wrong place, regardless of other circumstances," this court quoted from the early case of *Coker* v. *Birge*, 9 *Ga.* 425, 428 (54 Am. D. 347), as follows: "If one do an act, of itself lawful, which, being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance; for it is incumbent on him to find some other place to do that act where it will not be injurious or offensive. . . To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable." In *Ponder* v. *Quitman Ginnery*, 122 *Ga.* 29 (3) (49 S. E. 746), it was ruled: "The employment by the owner of a ginning plant of machinery which separates dust and sand from cotton and expels the particles of dust and sand into the air in large volumes, caus-

ing the same to be blown into the dwelling-house of an adjacent proprietor, to his great discomfort and injury, is an invasion of his property rights, for which an action for damages will lie." In *Holman* v. *Athens Empire Laundry Co.*, 149 *Ga.* 345 (100 S. E. 207, 6 A. L. R. 1564), the petitioner sought to enjoin the defendant from operating its plant with soft coal which threw out a black, dense smoke. The defendant's evidence showed that its laundry and the petitioner's building were located in the business section of the city, and the laundry had been in operation several years before the petitioner erected his building in close proximity thereto. In reversing the direction of a verdict for the defendant this court, on page 350 of the opinion, said: "Theoretically, every person has the natural right to have the air diffused over his premises in its natural state, free from all artificial impurities. Wood on Law of Nuisances (3d ed.), § 495. If this rule were literally applied, its application would seriously disturb business, commerce, and society itself. Hence, by air in its natural state and free from artificial impurities is meant pure air consistent *with the locality and nature of the community.* Wood on Law of Nuisances (3d ed.), § 496, and cases cited; Joyce on Law of Nuisances, § 136, and cases cited. [Italics ours.] The use of fuel in the home, the place of business, and the manufacturing establishment is necessary. In proportion as the population thickens, the impurities thrown into the air are increased. The pollution of the air, actually necessary to the reasonable enjoyment of life and indispensable to the progress of society, is not actionable; but the right (and such it must be conceded) must not be exercised in an unreasonable manner so as to inflict injury upon another unnecessarily. . . The right to use one's property as he pleases implies a like right in every other person; and it is qualified by the doctrine that the use in the first instance must be a reasonable one. . . In Crump *v.* Lámbert, L. R. 3 Eq., 409, 412, Lord Romilly, M. R., said: 'With respect to the question of law, I consider it to be established by numerous decisions that smoke, unaccompanied with noise or noxious vapor, that noise alone, that offensive vapors alone, although not injurious to health, may severally constitue a nuisance to the owner of adjoining or neighboring property.' To constitute smoke a nuisance, according to the authorities, it must be such as to produce a visible, tangible, and

appreciable injury to property, or such as to render it specially uncomfortable or inconvenient, or to materially interfere with the ordinary comfort of human existence. . . With respect to dwelling-houses, the rule is stated in Wood on Nuisances (3d ed.), § 505, as follows: 'The rule is that the comfortable enjoyment of the premises must be *sensibly* diminished, either by actual, tangible injury to the property itself, or by the promotion of such *physical* discomfort, as detracts *sensibly* from the ordinary enjoyment of life.'"

The allegations of the petition bring the case within the principles of law announced in the above-quoted decision and *Asphalt Products Co.* v. *Beard,* 189 *Ga.* 610 (7 S. E. 2d, 172), and *Delta Air Corp.* v. *Kersey,* 193 *Ga.* 862 (20 S. E. 2d, 245, 140 A. L. R. 1352). It is alleged substantially as follows: The plant is located in a populous section of the City of Gainesville, Georgia, and in the midst of the places of business and homes occupied by the petitioners. In its operation the plant emits and gives out such vile, offensive, and obnoxious odors, gas, and vapors that the air which the petitioners are forced to breathe in their places of business and their homes is so polluted as to be unbearable and renders it almost impossible for them to stay in their homes and at their places of business in the vicinity of the plant. The stench arising from the plant is so strong and great that it can be smelled as far as a mile and a half from the plant, and it permeates the clothing of the petitioners and their employees while they are engaged at their work at their places of business, making it necessary for them to change their clothing in order to get rid of the said odors. After the petitioners have inhaled the same, they become nauseated and are unable to eat their food with any relish, and on some occasions they have not been able to retain the said food after they have eaten it. "There is in principle no distinction between any of the cases, whether it be smoke, smell, noise, or gas." *Holman* v. *Athens Empire Laundry Co.,* supra. The petition as amended set forth a cause of action against Poultryland Inc. because of a continuing nuisance per accidens, and also against Jesse D. Jewell, it being alleged that in changing the character, structure, and nature of the nuisance, increasing the amount of noxious vapors and gases emitted by the said plant, Poultryland Inc. did so with the full knowledge and consent of the defendant Jewell and with his help and

assistance. The amendment charges in substance that both defendants conspired to maintain the alleged nuisance, constituting them joint tort-feasors. The court did not err in overruling the general demurrers on the ground that no cause of action was set forth.

But it is contended in one ground of the general demurrer of Poultryland Inc. that the petition shows on its face that the petitioners have an adequate remedy at law, and it is argued that, since the plant is alleged to be in the City of Gainesville, the petitioners should be relegated to the remedy provided in the Code, § 72-401, for the abatement of a nuisance by city authorities. In *Broomhead* v. *Grant,* 83 *Ga.* 451 (10 S. E. 116), cited and relied on by the plaintiffs in error, it was ruled: "To abate a nuisance, public or private, the remedy provided in the Code, §§ 4094-9 [including a section which is now § 72-401], should be resorted to, *unless the special facts make that remedy inadequate."* (Italics ours.) In *State ex rel. Boykin* v. *Ball Investment Co.,* 191 *Ga.* 382, 388 (12 S. E. 2d, 574), it was said: "We take no issue with the proposition, that, although a nuisance exists in a city under the government of a mayor or common council, a court of equity will in a proper case take jurisdiction of a suit to enjoin its continuance, notwithstanding the provisions of the Code, § 72-401, when the nuisance is a continuing one." In *Hornsby* v. *Smith,* 191 *Ga.* 491 (13 S. E. 2d, 20, 133 A. L. R. 684), it was said: "If the alleged conduct of the defendant constitutes a continuing nuisance as defined in the Code, § 72-101, the plaintiff is entitled to equitable relief." See also *Giles* v. *Rawlings,* 148 *Ga.* 575 (97 S. E. 521) ; *Hunnicutt* v. *Eaton,* 184 *Ga.* 485, 487 (191 S. E. 919). In *Spencer* v. *Tumlin,* 155 *Ga.* 341, 342 (116 S. E. 600), this court, after referring to the provision of the Code for abating a nuisance in cities and to *Broomhead* v. *Grant,* supra, pointed out that a continuing nuisance makes a proper case for equitable relief, and further said: "Besides, plaintiffs allege that this nuisance will cause sickness. Under these special facts, we do not think that the remedy provided under § 5331 [now 72-401] furnishes an ample and complete remedy for the plaintiffs." In *Waller* v. *Lanier,* 198 *Ga.* 64 (30 S. E. 2d, 925), also relied on by the plaintiffs in error, a solicitor-general brought an action to abate as a public nuisance a place where slot machines were maintained in

violation of the law against lotteries. While this court there ruled that the remedy under the Code, § 72-401, was adequate, it was recognized in the opinion in that case that special circumstances might require the intervention of equity. Here it is alleged that: "The maintenance and operation of said plant is a continuing and constant nuisance," and that "the acts of the defendants in permitting the erection and carrying on, operation and maintenance of the said plant and the permitting of the same on the property of the defendant have caused and are causing the petitioners irreparable and constantly recurring damages, and the same will result in a multiplicity of actions if the said acts are not restrained and enjoined." It was also alleged that the odors, gases, and vapors emitted from the plant are so obnoxious as to injuriously affect their health and comfort, causing many to become nauseated and to vomit, and requiring relief which can be adequately afforded only by a court of equity. It follows from the above that the contention that the petition as amended shows on its face that the petitioners have an adequate remedy at law is without merit.

Nor is there any merit in the ground of demurrer of Poultryland Inc. that it appears from the petition as amended that it is an alienee, and that no request, filed before the bringing of the action, has been made upon it to abate the nuisance, as required by the Code, § 72-105. There is no allegation that, before leasing the plant to Poultryland Inc. the defendant Jewell ever operated it. He merely "erected or permitted the erection," etc. The actual operation of the plant is charged to Poultryland Inc. in the language, "for some months past and at the present time the defendant, Poultryland Inc., through its officers, agents, employees, and servants, whose names are to your petitioners unknown, has been and is now engaged in the operation of said plant. . . That said plant in its operation emits and gives out such vile, offensive, and obnoxious odors, gas, and vapors," etc. Hence, Poultryland Inc. is shown to be the creator of the alleged nuisance. Even if it could be said to be an alienee, a theory to which we do not subscribe, the amendment to the petition shows a compliance with the statute, it being alleged that, when the conditions became even more unbearable by reason of the noxious vapors and gases being poured out from the smokestack of the plant into the homes and places of business of the petitioners, they requested and demanded

that the defendants abate the said nuisance and stop the pollution of the air with the said noxious, ill-smelling, and disagreeable vapors and gases; and the defendants having failed and refused to do so, the petitioners then brought this action. But the amendment alleges facts which dispense with the necessity of showing notice, for it is alleged that, after the erection and completion of the plant and the lease of it by Jewell to Poultryland Inc., the latter, with the help and assistance of Jewell, "changed the character, structure, and nature of the said nuisance and greatly increased the amount of noxious vapors and gases emitted by the said plant, in the following manner and ways." Then the amendment sets out in detail the various steps taken by Poultryland Inc. to dispose of the harmful vapors and gases and the consequential increased pollution of the air and greater discomfort to the petitioners in their places of business and in their homes. It was also alleged that the locality and community in which the plant is located is predominantly a residential section, in which a large number of both white and colored people live, and the maintenance and operation of the defendants' said plant in the manner in which it is operated and maintained in the community and locality is a continuing nuisance and should be enjoined in this action. Hence, we have allegations showing changes made by Poultryland Inc. itself in the character or structure of the alleged nuisance, in which case notice to abate is not essential to the maintenance of an action against it even as an alienee originally. *Middlebrooks* v. *Mayne,* 96 *Ga.* 449 (23 S. E. 398) ; *Seaboard &c. R. Co.* v. *Ambrose,* 122 *Ga.* 47, 48 (49 S. E. 815) ; *Georgia Power Co.* v. *Moore,* 47 *Ga. App.* 411, 412 (170 S. E. 520).

■ Error is assigned on the refusal of the trial judge to exclude, upon request, the witnesses from the courtroom, it being contended that it was mandatory upon the judge to accede to such request under the Code, § 38-1703, which provides: "In all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." The practice of separating witnesses or, as generally called, "putting under the rule," is of ancient origin and salutary in the proper administration of justice, the object being, of course, to prevent one

■

witness from being taught by another as to the testimony he should give. Whatever may have been the rule at common law, and despite interpretations placed thereon in any early decision of this court, the rule as fixed by the Code of 1863 (§ 3787) and continued in all subsequent Codes, as to the sequestration of witnesses, conferred upon the party making such request an absolute right, subject only to the sound discretion of the trial judge in permitting one or more witnesses to remain in the courtroom to advise the opposite party in the presentation of his case, and where it appears that in making the exception to the rule the fair rights of the opposite party are secured or the impairment of the efficiency of the court avoided by allowing a deputy or other officials, who are witnesses, to remain in the courtroom. The mandate of the law is that *in all cases* either party shall have the right to have the witnesses of the other party examined out of the hearing of each other, and, hence, the rule is applicable and mandatory in an interlocutory hearing for injunction. Here counsel for the defendants invoked the rule at the beginning of the hearing and before the introduction of any evidence, and the refusal of the trial judge to accede to such timely request was a denial of a substantial and positive right of the defendants. It is no answer to the violation of the mandatory rule to say that the record does not show any harm to have resulted to the defendants because of this error, since it has been held in numerous cases that, whenever the rights of a party are withheld or violated, the presumption of law is that he has been injured unless the contrary plainly appears. *Tedder* v. *Stiles*, 16 *Ga.* 2 (6) ; *Battle* v. *Royster Guano Co.*, 155 *Ga.* 322 (3) (118 S. E. 343) ; *Atlanta Coach Co.* v. *Cobb*, 178 *Ga.* 544 (1, 2) (174 S. E. 131) ; *Coleman* v. *Newsome*, 179 *Ga.* 47 (174 S. E. 923) ; *Stanley* v. *Warner Bros. Pictures Inc.*, 64 *Ga. App.* 228, 231 (12 S. E. 2d, 441). The error in depriving the defendants of such a substantial right rendered all subsequent proceedings nugatory and requires that a new hearing be had.

*Judgment reversed. All the Justices concur.*