## 57987. WHATLEY v. DUNN et al.

DEEN, Chief Judge.

Corrie C. Dunn and Clyde C. Yarborough, naming themselves as heirs at law of the deceased intestate Ellene Chalker McCoy, filed a petition in the Probate Court of McDuffie County alleging that they and other named heirs had agreed that they constituted all of the heirs of the deceased and that no administration was necessary.

The remaining named heirs were served. Betty Ruth Whatley, appellant, then filed a caveat alleging that she was the natural daughter of the deceased and sole heir of the estate. By consent the case was removed to the superior court. A jury trial ensued in which a verdict was entered against the appellant's claim, and she appeals from this judgment.

1. The four brothers and sisters of the deceased named as heirs and who were served as such in the probate court must be considered parties in that court. When the consensual transfer was made, only the petitioners Dunn and Yarborough and the caveatrix Whatley were named. We must thus decide whether the other siblings were "parties" such as to be subject to the rule of sequestration of witnesses, which with certain exceptions makes mandatory the exclusion of witnesses not parties to the cause. See *Smith v. State,* 215 Ga. 51 (5) (108 SE2d 688) (1959) and *Massey v. State,* 220 Ga. 883 (5) (142 SE2d 832) (1965). Where no reason is shown for violating the rule of sequestration further proceedings have been held nugatory. *Poultryland, Inc. v. Anderson,* 200 Ga. 549 (2) (37 SE2d 785) (1946); *Whitfield v. State,* 143 Ga. App. 779 (240 SE2d 189) (1977). We strongly feel that the allowance of these additional four witnesses, who were at no time designated in the pleadings as parties to the cause, to remain in the courtroom, and to allow three of them to testify, after hearing all of the evidence for both sides, that in their opinions their sister was not pregnant during the summer of 1929 when the caveatrix was born, was most damaging to the latter's case and would ordinarily constitute reversible error. We are constrained, however, by the many cases holding that an appeal from the probate court brings up "the whole case" (including parties not appealing, parties previously dismissed, and so on) to hold that, although not technically named as parties to the appeal the siblings served with process in the probate court were such parties to the proceedings that it was not an abuse of discretion for the superior court judge to allow them to remain in the courtroom as parties during the trial of the case. See *Howard v. Worrill,* 42 Ga. 397 (1871); *Hanie v. Taylor,* 4 Ga. App. 545, 546 (61 SE 1054) (1908); *Byers v. Byers,* 41

Ga. App. 671 (1) (154 SE 456) (1930); *Ledford v. Farrow,* 134 Ga. App. 591 (1) (215 SE2d 344) (1975).

2. The caveatrix here presented a strong case, but one which of necessity depended in large measure upon statements to her by the deceased not made in the presence of others. According to her testimony her foster mother, since deceased, told her when she was 18 years of age that she was not a blood relative. She then attempted, without letting her foster parents know, to ascertain her natural mother. These efforts led in 1966 to the obtention of a certified copy from the Probate Court of Bibb County of an apprenticeship agreement between her foster parents and "Ellene Chalker known as Mrs. Johnson" in which the latter apprenticed her six-week-old infant to Mrs. Middlebrooks until the age of 21 years. There seems no dispute but that the Middlebrooks in question was the caveatrix' foster mother. Johnson, the putative father of the infant, was never identified. Handwriting experts differed over whether the written signature "Ellene Chalker" on the apprenticeship agreement was in fact that of the intestate, but no other person with that name appears to have existed at that time and place.

The caveatrix and her husband testified that through tracing the name "Chalker" they eventually identified and located Ellene, then married to McCoy; that the parties got together, frequently exchanged visits, and carried on a harmonious relationship for several years but for reasons of delicacy did not divulge this to the caveatrix' children for some time, and never to the foster parents, both of whom are now dead. Nor was anything ever said to any of the Chalker relatives. A number of group snapshots of the Whatleys and Ellene Chalker McCoy, taken subsequent to 1966, were placed in evidence.

The appellees produced themselves, two nieces and three of the other four siblings designated by them as heirs, all of whom swore that the intestate was not pregnant during the summer of 1929, and that the family repute was that she had never had a child. Thus, the evidence was in sharp conflict, and it cannot be said that a jury verdict was demanded for either side.

3. We have examined the remaining enumerations

of error and find them without merit. A question to a handwriting expert as to whether bank tellers are generally proficient in handwriting analysis called for a conclusion, and no foundation was laid connecting it with this case. Grounds 6 and 9 refer to testimony properly ruled out as hearsay. Whether the caveatrix and her husband had been active in church affairs was irrelevant to the issue to be decided. In ground 8 inquiry was made of a niece as to the general repute of Ellene Chalker McCoy having given birth. The answer did not refer to general repute in the community, which is not admissible under the ruling in *Lamar v. Allen,* 108 Ga. 158 (3) (33 SE 958) (1899) but to "general knowledge that goes among the family," which she described as "a close family to be a large family." The witness thus limited her knowledge to that obtained through family sources.

It was not error to overrule the motion for a new trial.

*Judgment affirmed. Shulman and Carley, JJ., concur.*

ARGUED MAY 29, 1979 — DECIDED
JUNE 22, 1979.

*Knox & Evans, Warren D. Evans,* for appellant.
*Jack D. Evans, Albert H. Dallas,* for appellees.