S95G1892. FORD et al. v. UNIROYAL GOODRICH TIRE
COMPANY et al.
S95G1897. FORD v. UNIROYAL GOODRICH TIRE COMPANY
et al.
(476 SE2d 565)

FLETCHER, Presiding Justice.

Franklin Ford III, and his parents filed separate products liability actions against Uniroyal Goodrich Tire Company and NTW for injuries received when a car hit their stalled van on an interstate highway. The trial court ordered the two actions to begin on the same day with separate juries empaneled for each case to hear all common evidence. Although both juries found Uniroyal liable and awarded compensatory damages, only the jury in Franklin Ford's case found Uniroyal liable for punitive damages. The trial court instructed that jury that 75 percent of any punitive damages award would be paid into the state treasury and the jury returned a substantial verdict. The Court of Appeals reversed in both actions and ordered a new trial on several grounds.[1]

We granted the writ of certiorari to consider: (1) whether parties who do not agree to consolidation of related cases may be required to try the cases together before separate juries, and (2) whether the requirement in OCGA § 51-12-5.1 that 75 percent of punitive damages awards be paid to the state is a proper subject for a jury instruction. On the first issue, we hold that OCGA § 9-11-42 (a) applies to simultaneous proceedings before separate juries in the same courtroom because a dual jury trial has many attributes of a consolidated action or joint trial. On the second issue, we hold that the jury instruction was improper because the distribution of a punitive damages award injects prejudicial issues that are irrelevant to the purpose of punitive damages. We conclude that the trial court committed reversible error in ordering a dual jury trial without the consent of the parties and in giving the prejudicial 75 percent charge on punitive damages.

*Procedural History*

Prior to trial, Uniroyal moved to consolidate the two actions under OCGA § 9-11-42 (a), but the plaintiffs opposed the motion. The

[1] *Uniroyal Goodrich Tire Co. v. Ford,* 218 Ga. App. 248 (461 SE2d 877) (1995).

trial court then ordered the empaneling of two juries to hear substantially the same evidence in the same courtroom at the same time, which Uniroyal opposed. After the dual jury trial, one jury awarded Claudia Ford $150,000 in compensatory damages and the second jury awarded Franklin Ford $17 million in compensatory damages, including $12.6 million for pain and suffering. Following testimony and arguments on punitive damages, the trial court gave the following charge to the Franklin Ford jury:

> The statutory law of Georgia provides that in a tort case in which the cause of action arises from product liability, seventy-five percent of any amount awarded as punitive damages, less a proportionate part of the cost of litigation, including reasonable attorneys' fees, shall be paid into the treasury of the state.

The jury returned a verdict of $25 million in punitive damages. The parties appealed.

The Court of Appeals issued a fractured decision in which six of the eight participating judges wrote an opinion. A majority reversed on the grounds that the trial court erred in allowing evidence of recall notices of other tires and an internal Uniroyal study and in giving jury charges on breach of warranty and the distribution of punitive damages. Among the remaining issues affirmed was the order mandating a dual jury trial. Although all eight participating judges agreed that the trial court erred in combining the separate actions for joint proceedings over Uniroyal's' objections, only four judges found the error was harmful.[2] On the punitive damages charge, six judges held that the giving of the 75 percent charge was reversible error.[3] Franklin Ford appeals in Case No. S95G1892 and Claudia Ford appeals in Case No. S95G1897.

---

[2] See 218 Ga. App. at 249-251 (plurality opinion) (no reversible error since defendants did not show prejudice from procedure); id. at 272 (McMurray, P. J., dissenting) (no reversible error since jurisdiction and venue proper in Fulton County); id. at 262-263 (Ruffin, J., concurring specially) (reversible error since defendants do not have to prove prejudice if joinder violates plain language of statute); & id. at 264 (Beasley, C. J., concurring in part and dissenting in part) (harmless error rule does not apply when joint proceeding violates litigant's statutory right to withhold consent).

[3] See 218 Ga. App. at 254 (plurality); id. at 262 (Ruffin, J., concurring specially); id. at 264 (Beasley, C. J., concurring in part and dissenting in part). A different majority, however, held that the evidence was sufficient to present the issue of punitive damages at a new trial. See id. at 279 (Pope, P. J., dissenting).

## Dual Jury Trial

1. The Georgia Civil Practice Act provides for joint trials and consolidation of actions. OCGA § 9-11-42 (a) states:

> *Consolidation.* When actions involving a common question of law or fact are pending before the court, if the parties consent, the court may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Black's Law Dictionary defines "consolidation" as the act of "uniting several actions into one trial and judgment . . . where all the actions are between the same parties, pending in the same court, and involving substantially the same subject-matter, issues, and defenses."[4] A "joint trial" is defined as a "trial of two or more persons . . . conducted within the framework of one trial."[5]

Although we conclude that the trial court in this case ordered neither a consolidated action nor a joint trial, it mandated a procedure that has attributes similar to both. Like a consolidated action, the Fords' actions were pending in the same court and involved substantially the same subject-matter, issues, and defenses. Like a joint trial, this case had two plaintiffs whose claims were tried within the framework of one trial. The primary disparity between the procedures specified in section 42 (a) and the dual jury trial is that two juries, rather than one, rendered the verdicts.

This distinction is insufficient to preclude section 42 (a) from governing the procedure employed here. First, the trial court ordered the dual jury trial as an alternative to consolidation after the plaintiffs refused to consent to a joint trial. Second, the trial court employed the same rationale — efficient judicial administration — that supports the consolidation of actions or issues. Third, both trial courts and litigants would be able to contravene legislative intent and the consent requirement of section 42 (a) if we ruled that the section did not apply to the dual jury procedure. Instead, we hold that section 42 (a) applies to the dual jury trial and other procedures that combine separate actions in joint court proceedings.[6]

2. Although patterned after the federal rule, the state provision

---

[4] Black's Law Dictionary 280 (5th ed. 1979).

[5] Id. at 753.

[6] See *Uniroyal*, 218 Ga. App. at 264 (Beasley, C. J., concurring in part & dissenting in part) (section 42 "governs the combining of separate cases for the court proceedings").

differs from the federal rule in one way: it requires the parties' consent to either consolidation or a joint trial. Relying on the plain language of the statute, this Court has consistently held that the parties must consent before a trial court may consolidate or join related actions for trial.[7]

The legislative history of House Bill 6, which became the Civil Practice Act of 1966, shows that the General Assembly adopted the consent requirement despite opposition from the Senate. As originally introduced and approved by the House of Representatives, section 42 (a) required the consent of the parties, but the Senate amended the bill by deleting the requirement.[8] The Committee of Conference recommended that the Senate recede from its amendment, and both houses approved section 42 (a) with the language "if the parties consent."[9] A year later the General Assembly rejected a state bar proposal to amend the section to remove the consent requirement.[10] Thus, the legislature intended to limit the trial court's discretion to decide how cases on its docket are to be tried by giving the litigants control over the decision to join actions that have common questions of law and fact.

In this case, Uniroyal opposed the dual jury trial. Since the trial court ordered the procedure without the consent of all the parties, it violated OCGA § 9-11-42 (a). When the statutory rights of a party are violated, the law presumes injury.[11] Requiring a party to show harm from a consolidation would eviscerate the consent requirement of section 42 (a) and contravene the legislature's intent that the parties control the issue. Therefore, we conclude that the trial court committed reversible error in ordering a dual jury trial without the consent of the parties and reverse the Court of Appeals on this issue.[12]

3. In reversing, we note that the requirement of party consent in section 42 (a) conflicts with the general intent of the consolidation rule. "That objective is to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the

---

[7] *Carter v. Witherspoon*, 228 Ga. 485, 487 (186 SE2d 534) (1971); *Herring v. McLemore*, 248 Ga. 808, 809 (286 SE2d 425) (1982).

[8] 1966 Ga. S.J. 812; 1966 Ga. H.J. 1837.

[9] 1966 Ga. S.J. 1283; 1966 Ga. H.J. 2151; see Ga. L. 1966, pp. 609, 654.

[10] See E. Freeman Leverett, The 1967 Amendments to the Georgia Civil Practice Act & the Appellate Procedure Act, 3 Ga. St. B.J. 383, 403-404 (1967).

[11] *Hill v. Crowell*, 244 Ga. 294 (260 SE2d 18) (1979) (presuming harm when parties denied statutory right to question jurors individually); *Walker v. State*, 216 Ga. 15, 16 (114 SE2d 431) (1960) (ordering new trial based on bailiffs' failure to supervise jury); *Poultryland v. Anderson*, 200 Ga. 549, 562 (37 SE2d 785) (1946) (holding reversible error when trial court violated party's right to have witnesses sequestered).

[12] Our decision in *Herring v. McLemore* does not require a different result. The implication in that case that the harmless error rule applies is dictum since the parties did not appeal the trial court's consolidation order. See 248 Ga. at 809.

court may be dispatched with expedition and economy while providing justice to the parties."[13] One commentator concluded that the General Assembly emasculated the rule in Georgia by inserting the words "if the parties consent."[14] As this case shows, giving the litigants control over the issue constricts the ability of trial courts to properly control their docket and order the merger of related actions when needed to avoid unnecessary costs and delay.[15] Until the legislature amends section 42 (a) to remove the consent requirement, however, it applies when the trial court orders the consolidation or joinder, in whole or in part, of separate actions.

## *Punitive Damages Award*

4. As part of the Tort Reform Act of 1987, the Georgia General Assembly enacted a new Code section on punitive damages. The purpose of punitive damages is "to punish, penalize, or deter" a defendant.[16] OCGA § 51-12-5.1 places several limitations on the recovery of punitive damages: plaintiffs must prove the defendant's wilful conduct by clear and convincing evidence; the issues of liability for punitive damages and the amount to be awarded are bifurcated; and there is a cap of $250,000 in tort actions not arising from products liability or a specific intent to harm.[17] In addition, in products liability actions the act prohibits multiple awards of punitive damages arising from the same act or omission, regardless of the number of causes of action that may arise,[18] and allocates 75 percent of the punitive damages award to the state treasury.[19] Given that the defendant may be punished only one time for acts or omissions that result in a products liability action, the statute places no limit on the amount of punitive damages that may be recovered in that action.[20]

In rejecting a constitutional challenge to the 75 percent allocation provision, we discussed at length the General Assembly's intent in enacting the provision.[21] The legislature passed the 75 percent

---

[13] 9 Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure*, § 2381 (2d ed. 1995).

[14] See E. Freeman Leverett, Comments on the Georgia Civil Practice Act of 1966, 3 Ga. St. B.J. 295, 306 (1967).

[15] See *Uniroyal*, 218 Ga. App. at 278 (Pope, P. J., dissenting).

[16] OCGA § 51-12-5.1 (c).

[17] OCGA § 51-12-5.1 (b), (d), (g); see also *Bagley v. Shortt*, 261 Ga. 762 (410 SE2d 738) (1991) (holding that $250,000 limit on punitive damages does not violate due process, equal protection, or right of access to courts).

[18] Since no charge was given on the one-time recovery rule, it is not an issue in this case.

[19] OCGA § 51-12-5.1 (e).

[20] See OCGA § 51-12-5.1 (e) (1).

[21] See *Mack Trucks v. Conkle*, 263 Ga. 539, 541-544 (436 SE2d 635) (1993); *State of Ga. v. Moseley*, 263 Ga. 680, 681-682 (436 SE2d 632) (1993) (holding that subsection (e) (2) does

provision to punish defendants who have the potential to damage society at large. "The statute furthers this purpose by not allowing the first plaintiff to reach the courthouse with a product liability lawsuit to reap a windfall from the punitive damages, but instead requiring that three-quarters of the punitive damages awarded be paid into the state treasury." This action benefits all Georgia citizens who risk suffering harm from the defendant's acts.[22] Since the goal is to punish and deter the defendant, we noted that it is "insignificant under the statute that the plaintiff does not receive the full award."[23]

Relying on this analysis, we hold that instructing the Franklin Ford jury about the distribution of the punitive damages award was error.[24] As the statute repeatedly states, the purpose of punitive damages is to punish and deter the defendant, not to compensate the victim.[25] As we have previously stated, the 75 percent allocation rule was enacted to fulfill this purpose, not to generate additional state revenue.[26] Given the unquestioned purpose of the punitive damages statute, the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct.[27] Therefore, it is irrelevant who will be compensated by the award or how much the plaintiff will ultimately receive.[28] By instructing the jury on the statutory scheme for allocating a punitive damages award, the trial court improperly shifted the jury's focus from the critical question of the defendant's conduct to the inappropriate question of the plaintiff's compensation.11

5. In concluding that a jury instruction based on a similar statute was reversible error, the Supreme Court of Oregon identified two problems that arise from informing the jury about the distribution of

---

not violate the right to a jury trial or the "right of choice" provisions under Art. I, Sec. I, Pars. XI & XII of the Georgia Constitution), cert. denied, 511 U. S. 1107 (114 SC 2101, 128 LE2d 663) (1994).

[22] *Mack Trucks*, 263 Ga. at 542.

[23] Id.

[24] See *Honeywell v. Sterling Furniture Co.*, 797 P2d 1019, 1023 (Or. 1990) (holding that trial court erred in instructing jury on how statute required punitive damages award to be distributed); *Burke v. Deere & Co.*, 6 F3d 497, 513 (8th Cir. 1993) (holding that it was improper under Iowa law to inform the jury that a portion of any punitive damages award would go into a civil trust fund), cert. denied, 510 U. S. 1115 (114 SC 1063, 127 LE2d 383) (1994).

[25] See OCGA § 51-12-5.1 (a), (c), & (d) (2).

[26] See *Mack Trucks*, 263 Ga. at 543; *Moseley*, 263 Ga. at 681.

[27] See *Moseley*, 263 Ga. at 681.

[28] See, e.g., *Bryant v. Haynie*, 216 Ga. App. 430, 432 (454 SE2d 533) (1995) (trial court properly excluded evidence of existence and amount of plaintiffs' settlement with other defendants); *Allison v. Patel*, 211 Ga. App. 376, 381-383 (438 SE2d 920) (1993) (harmful error to allow evidence of fact or amount of plaintiff's settlement with other defendants); *Stoner v. Eden*, 199 Ga. App. 135, 136-137 (404 SE2d 283) (1991) (defense counsel's comment on contingent-fee contract between plaintiffs and their counsel was improper and irrelevant to the issue of damages).

potential awards.[29] First, the instruction encourages the jury to award punitive damages for an improper reason — to enhance a state account. As Ford's attorney told the jury in closing arguments: "Keep in mind that whatever you decide, the vast majority of it doesn't go to the plaintiff. It is for each and every citizen of this state. That's the joy of it. It goes to the state." Second, the instruction encourages the jury to deliberate on the plaintiff's share of punitive damages and add additional amounts to compensate for the portion distributed to other persons.[30] The Oregon court concluded that informing the jury about the distribution of a punitive damages award was error, despite the instruction's correct description of the law, because it "distracts the jury from the appropriate line of analysis."[31] Because we find this rationale persuasive, we rule that Uniroyal was harmed when the trial court provided the jury with an improper basis for imposing punitive damages.

We reject the argument that Uniroyal invited the error by its opening statement and closing argument on punitive damages. After the jury awarded $17 million in compensatory damages to Franklin Ford, Uniroyal's attorney argued that there was no need to punish or deter the company beyond the "substantial penalty" imposed by the verdict. Although the jury apparently did not find the argument persuasive, it is not improper for a defense attorney to argue that punitive damages are unnecessary because a large compensatory damages award has adequately punished a company. Since the Court of Appeals correctly decided that the trial court erred in charging an irrelevant Code section on the allocation of punitive damages and the 75 percent charge was prejudicial, we affirm its decision on this issue.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

SEARS, Justice, concurring.

For the reasons given in the majority opinion, I am constrained to agree with the majority's holding that the trial court erred in conducting the dual jury trial without the consent of all the parties. I write separately, first, to commend the trial court for its sensible and practical attempt to streamline the trial process and, second, to urge the General Assembly to remove the requirement from OCGA § 9-11-

---

[29] See *Honeywell*, 797 P2d at 1021-1022.

[30] See *Burke*, 6 F3d at 513 (finding size of punitive damages award indicated jury sought to "engage in a social reallocation of resources" to benefit persons not before the court).

[31] *Honeywell*, 797 P2d at 1021; see also *Holger v. Irish*, 851 P2d 1122, 1130 (Or. 1993) (prejudicial to instruct jury about the effect of a settlement between plaintiff and another defendant, although instruction was correct description of the law).

42 (a) that parties must consent to action like that taken by the trial court in this case. Handling complex litigation imposes formidable problems for trial judges and litigants alike, and often requires trial judges to possess and employ keen and innovative organizational skills. Effective procedures for handling such cases will not spring forth fully born, like Athena from Zeus's head, but will only evolve through the efforts and resourcefulness of trial courts and other participants in the litigation process. I therefore urge trial courts, where appropriate, to experiment with new, and hopefully effective, methods for litigating complex cases.

DECIDED OCTOBER 7, 1996 —
RECONSIDERATION DENIED OCTOBER 31, 1996.

*Murphy, Murphy & Garner, Thomas B. Murphy, Walker, Hulbert, Gray & Byrd, Lawrence C. Walker, Jr., Charles W. Byrd, Smolar, Roseman, Brantley & Seifter, Yehuda Smolar, Barry L. Roseman, G. Grant Brantley, James I. Seifter, Thomas A. Rice, William B. Herndon, Calvin S. Graves, Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom,* for appellants.

*Michael J. Bowers, Attorney General, Michael E. Hobbs, Senior Assistant Attorney General, Alston & Byrd, G. Conley Ingram, Cynthia L. Counts, R. Wayne Thorpe, Love & Willingham, Daryll Love, Allen S. Willingham, Clark S. Gillespy, John A. Gilleland, Robert P. Monyak, Johnson, Kane & Penna, Stephen R. Kane,* for appellees.

*David W. Boone, Craig T. Jones, James O. Wilson, Jr., William R. Waldrop, Lawrence J. Pond, Raymond J. Doumar, James D. Hollingsworth,* amici curiae.