67291. OVERSTREET v. NICKELSEN et al.

CARLEY, Judge.

Appellant-plaintiff accidentally cut her finger with a knife while slicing meat at home. She was immediately treated at Doctors Hospital by appellee-Dr. Nickelsen, an osteopath, who diagnosed the cut as a superficial laceration and sutured the wound. The following day, appellant's finger was examined by her family physician, appellee-Dr. Schwartz, who also is an osteopath. Appellant continued to experience pain and was unable to move her wounded finger. She subsequently consulted a medical doctor, who determined that she had not merely suffered a superficial laceration, but had also cut the flexor tendon sheath and the radial digital nerve in her finger. Several operations were performed in an attempt to correct the problem. However, appellant continued to experience pain, and the incapacitated

finger rendered her entire left hand useless. Appellant's finger was eventually amputated. Appellant brought the instant medical malpractice suit against appellee-Nickelsen, appellee-Schwartz, and Doctors Hospital. Summary judgment was granted to Doctors Hospital, which was affirmed by this court in *Overstreet v. Doctors Hosp.*, 142 Ga. App. 895 (237 SE2d 213) (1977). Following a jury trial as to the two remaining defendants, a verdict was returned for them. Appellant appeals from the denial of her motion for a new trial.

1. Appellant asserts that the trial court erred in giving the jury the following charge on contributory negligence: "I charge you that the defendants contend that the sole proximate cause of the loss was the negligence of the plaintiff herself. If you find from the evidence that the sole proximate cause of the loss was the negligence of the plaintiff, it would be your duty to return a verdict in favor of the defendant." Appellant properly excepted to this charge on the grounds that the appellees had not alleged contributory negligence, and that there was no evidence to support such a charge.

The gravamen of appellant's complaint was that *after* she accidentally cut her finger, appellees failed properly to diagnose and treat the finger, and abandoned her. Appellees did not plead nor contend at trial that the injuries sustained as the result of their allegedly negligent diagnosis, treatment and abandonment were proximately caused by appellant's own negligence. Nor do we find any evidence of contributory negligence by appellant.

" 'A material misstatement of the contentions of the parties is prejudicial error . . . As a general rule a charge which misstates the contentions of the prevailing party, and tends to confuse the jury as to those contentions and as to the real issues in the case, in such a manner as would permit the prevailing party to recover (or to defend successfully) on a contention he did not make and not authorized by the evidence, necessitates the grant of a new trial.' [Cits.]" *Mitchell v. Gay*, 111 Ga. App. 867, 871 (3) (143 SE2d 568) (1965). The charge on contributory negligence was harmful error in this case, "for it gave the [appellees] another defense to which they were not entitled." *Baldwin v. Walker*, 143 Ga. App. 382, 384 (3) (238 SE2d 695) (1977). See also *Rothrock v. Martin*, 138 Ga. App. 16 (1) (225 SE2d 489) (1976); *Pace v. Foster*, 150 Ga. App. 895, 896 (1) (259 SE2d 100) (1979); *Campion v. McLeod*, 108 Ga. App. 261 (132 SE2d 848) (1963).

Appellee-Schwartz's argument on appeal that the charge was authorized because appellant was somehow negligent in initially injuring her own finger is totally without merit. The cause of the injury for which appellant sought treatment has absolutely no relevancy to whether she somehow contributed to any of the subsequent injuries sustained as the result of appellees' allegedly negligent treatment, diagnosis or abandonment of her. Compare *Robinson v. Campbell*, 95

Ga. App. 240 (97 SE2d 544) (1957).

2. Appellant contends that the trial court erred in failing to give her requested charge on abandonment. The evidence shows that appellant was treated by appellee-Schwartz the day after she sustained her injury. She subsequently visited appellee-Schwartz for treatment approximately every three days thereafter. However, appellant testified that her last visit to appellee-Schwartz was sixteen days after the date she injured her finger, and after that visit, appellee-Schwartz refused to see her again because there was nothing more he could do for her finger. Appellant alleges that this constituted abandonment by appellee-Schwartz.

"Abandonment of a patient is a tortious act. [Cit.] 'Before a physician can abandon or withdraw from a case without liability therefor, he must either give reasonable notice or provide a competent physician in his place . . . "A physician who leaves a patient at a critical stage of the disease, without reason, or sufficient notice to enable the party to procure another medical attendant, is guilty of a culpable dereliction of duty." ' [Cit.]" *Pritchard v. Neal,* 139 Ga. App. 512, 514 (4) (229 SE2d 18) (1976).

Although there may be a question of fact in the present case as to whether appellee-Schwartz refused to treat appellant after the sixteenth day following her injury, there is absolutely no evidence that appellee-Schwartz "abandoned" appellant at a "critical stage." The only evidence of record concerning the time within which further treatment of appellant was allegedly necessary was testimony to the effect that nerve repair surgery should be performed within three to ten days of the cutting of the nerve. This is obviously well before the alleged abandonment of appellant by appellee-Schwartz. The evidence shows at most a misdiagnosis or mistreatment during a "critical stage," not an abandonment of appellant during such a stage. Likewise, there was absolutely no evidence that appellee-Nickelsen abandoned appellant. "There was no evidence that [appellees] abandoned [appellant] at a critical time when there was a need for immediate treatment, for, although the record does disclose [evidence that appellant] needed surgical treatment, it does not disclose that such surgical treatment was needed then and there or that if [appellant] had sought within a reasonable time thereafter other medical care [she] would have suffered any injury from the alleged abandonment." *Carroll v. Griffin,* 96 Ga. App. 826, 828 (101 SE2d 764) (1958).

There being no evidence that appellee-Schwartz's alleged abandonment occurred at a critical time when there was a need for immediate treatment, nor any evidence of abandonment by appellee-Nickelsen, a charge on abandonment was properly refused. Compare *Norton v. Hamilton,* 92 Ga. App. 727 (89 SE2d 809) (1955); *Pritchard v. Neal,* supra.

3. During the trial, the deposition of Dr. Whitson, an M.D. testifying for appellant, was read into evidence. During redirect examination, the following question was asked: "Assume that [appellant] after she received the treatment and examination that she received in the emergency room on the day that she cut her finger, that she was . . . referred to another physician to follow her up from the point of treatment at the emergency room later. Would a physician being in the position of that follow-up examination be expected to examine the sensitivity in the finger?" The trial court sustained an objection to this question on the ground that, as phrased, it called for an answer which was not predicated upon the standard of care and skill exercised by the medical profession generally.

"To establish professional medical negligence the evidence presented by the patient must show a violation of the degree of care and skill required of a physician. [OCGA § 51-1-27]. Such standard of care is that which, under similar conditions and like circumstances, is ordinarily employed by the medical profession generally. [Cits.] There is a presumption that medical or surgical services were performed in an ordinary skillful manner and the burden is on the plaintiff to show failure to exercise due care and skill. [Cits.] Excepting in a few extreme circumstances, the question of compliance with the required standards must be presented through expert testimony. [Cits.]" *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 664 (222 SE2d 162) (1975).

While the question asked of Dr. Whitson in this instance failed to use the exact language so often quoted by our courts, we find that the question was sufficiently phrased to establish as its predicate a standard of "due care and diligence" exercised by physicians generally. "[S]uch explicit conclusory pronouncements out of the mouths of those clothed with the mantle of evidentiary expertise are not essential." *Lawrence v. Gardner*, 154 Ga. App. 722, 724 (270 SE2d 9) (1980). See also *Wilson v. Kornegay*, 108 Ga. App. 318, 320 (132 SE2d 791) (1963). Contrary to appellee-Schwartz's assertions, the question did not ask Dr. Whitson to express his own personal opinion concerning the proper procedures. Compare *Wagner v. Timms*, 158 Ga. App. 538, 539 (281 SE2d 295) (1981); *Kenney v. Piedmont Hosp.*, supra at 664. The trial court erred in excluding a response to the question.

4. Appellant asserts that the trial court erred in giving a particular charge to the jury. The contested charge instructed the jury that in a medical malpractice action, the presumption is that the medical services were performed in an ordinary skillful manner, that the burden is on the one receiving the services to show a want of due skill and diligence, and that the proof required to overcome such a presumption of care, skill and diligence must come from an expert witness.

It is undisputed that the charge as given is a correct statement of

the law in Georgia. *Shea v. Phillips*, 213 Ga. 269, 271 (2) (98 SE2d 552) (1957); *Pilgrim v. Landham*, 63 Ga. App. 451, 454 (11 SE2d 420) (1940); *Summerour v. Lee*, 104 Ga. App. 73 (2) (121 SE2d 80) (1961); *Killingsworth v. Poon*, 167 Ga. App. 653, 654 (307 SE2d 123) (1983). However, appellant contends that the legal principle is not an applicable subject upon which a jury should be charged. Specifically, appellant asserts that the "presumption" that medical services were performed in an ordinary skillful manner "vanishes" from a case immediately upon the introduction of evidence by medical experts that the services were not performed in such an ordinary skillful manner. Thus, according to appellant, if the initial presumption has already been eliminated from a case because rebutting evidence has been introduced during the course of the trial, the jury should not be charged as to the then non-existent presumption. Therefore, appellant asserts that in the instant case, when medical experts testified that appellees did not exercise the requisite standard of care, the presumption of their non-negligence vanished, and it was error for the trial court to charge the jury on the presumption.

In order to address this assertion, we find it necessary to "venture into that never-never land of the 'Battle of Presumptions.'" Agnor's Ga. Evidence, § 17-8. Of the many categories of presumptions, the presumption that medical services were performed in an ordinary skillful manner falls into the category of rebuttable presumptions of law. See OCGA § 24-4-21. "Presumptions of law . . . are conclusions and inferences which the law draws from given facts." *Jefferson Standard Life Ins. Co. v. Bentley*, 55 Ga. App. 272, 282 (190 SE 50) (1937). Presumptions of law are either rebuttable or conclusive. OCGA §§ 24-4-21; 24-4-24. A rebuttable presumption "is merely a circumstantial inference selected by the law as the most rational hypothesis from the given facts, and may or may not be rebutted according to the quality of evidence introduced. It yields to direct, positive and uncontradicted evidence, i.e. it gives way to proved facts. [Cits.] It will yield to a contrary conclusion, where the circumstances supporting such contrary conclusion exclude the presumption as a reasonable hypothesis by a preponderance of the evidence." *Jefferson Standard Life Ins. Co. v. Bentley*, supra at 282. Thus, under Georgia law, the presumption is that, in the absence of evidence to the contrary, medical services were performed in an ordinary, skillful manner. The proof required to rebut that presumption must come from expert medical witnesses. *Shea v. Phillips*, supra.

The question still remains, however, whether the presumption at issue totally "vanishes" during the trial merely when contrary evidence is introduced or remains instead throughout the trial and goes to the jury room. "A presumption of law, being a circumstantial inference, may become more probable, as existing in fact, by the introduc-

tion of supporting evidence, or may become less probable by the introduction of circumstances tending in some degree to overthrow it, but *will not necessarily disappear unless [sufficiently] rebutted . . .* [Cit.]" (Emphasis supplied.) *Jefferson Standard Life Ins. Co. v. Bentley*, supra at 283. Although numerous theories exist, "it would appear that the effect of presumptions has been settled in Georgia." Agnor's Ga. Evidence, supra at 350. "[M]ost rebuttable presumptions of law in Georgia are rebutted *only when the jury is persuaded* by a preponderance of the evidence or other required degree of proof to find that the presumed proposition is not there or when the same finding is demanded by the evidence." Green, Ga. Law of Evidence (2nd ed.), § 23.

Our courts have repeatedly held that it is not error to charge the jury concerning rebuttable presumptions. "Whether the presumption has been successfully rebutted is ordinarily a question for the jury. [Cit.]" *Nat. Life &c. Co. v. Hankerson*, 49 Ga. App. 350, 352 (7) (175 SE 590) (1934). See also *Wright v. Hicks*, 12 Ga. 155, 160 (2) (1852); *Abercrombie v. State*, 138 Ga. App. 536 (3) (226 SE2d 763) (1976); *Johnson v. Sullivan*, 247 Ga. 663 (1) (278 SE2d 640) (1981); *Gibson v. Gibson*, 54 Ga. App. 187 (187 SE 155) (1936); *Strickland v. Strickland*, 201 Ga. 293, 298 (2) (39 SE2d 483) (1946); *Fields v. State*, 221 Ga. 307, 310 (10) (144 SE2d 339) (1965). Compare *Floyd v. Colonial Stores*, 121 Ga. App. 852 (1) (176 SE2d 111) (1970); *Seaboard Air-Line R. Co. v. Fountain*, 173 Ga. 593 (2b) (160 SE 789) (1931).

Accordingly, we find that the trial court in the instant case did not err in charging the jury on the rebuttable presumption that medical services are performed with due care. "It [was] not error that the court should tell the jury what the legal effect of evidence is. On the contrary, it is his duty to do so." *Jefferson Standard Life Ins. Co. v. Bentley*, supra at 284.

5. The final assertion is that the trial court erred in charging the jury that appellant was required to present expert medical testimony to overcome the presumption that medical services were performed in an ordinary skillful manner, and that medical testimony was also necessary to show the cause of the condition of which appellant complains. Appellant contends that all parties had agreed that a sensitivity test should have been performed and, therefore, the only question before the jury was whether or not the test was in fact performed. This issue, appellant asserts, does not require expert testimony.

The charges as given were correct statements of Georgia law. Appellant had alleged in her complaint and evidence in the form of medical testimony was presented at trial that appellees were negligent in their diagnosis and treatment other than by their failure to perform a sensitivity test. Accordingly, whether or not the sensitivity test had been given was not the only issue before the jury. Furthermore, we

find no evidence to support appellant's contention that appellee-Schwartz had "agreed" that the sensitivity test should have been performed by him. The contested charges were authorized by the evidence.

6. For reasons discussed in Divisions 1 and 3, the judgment must be reversed.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 13, 1984 —
REHEARING DENIED MARCH 29, 1984 — ▮▮▮▮▮▮▮

*Michael K. Jablonski*, for appellant.
*Peter K. Kintz, Julia B. Jagger, Alan F. Herman*, for appellees.

