77641, 77660. KING COTTON, LTD. v. POWERS et al.; and vice versa.

(380 SE2d 481)

SOGNIER, Judge.

Michael Scott Powers, individually, as executor of the last will and testament of his deceased wife, Vicki Saunderson Powers, and as next friend of his children, Erin and Megan Powers, brought suit against King Cotton, Ltd., the owner and operator of a cotton gin, Robert Frank Cobb, the driver of a tractor trailer truck, and Wayne Peavy d/b/a Peavy Trucking, Cobb's employer, for damages incurred in an automobile accident. The case was tried before a jury, and after the close of the evidence, Cobb and Peavy settled with Powers and were dismissed from the suit. The jury returned a verdict against King Cotton, and it appeals. Powers, Cobb, and Peavy cross-appeal from certain rulings of the trial court.

The record reveals that in 1986, King Cotton opened a cotton gin in Lee County, Georgia. The property on which the gin is located is adjacent to State Route 32, a two-lane rural road. There is a dirt driveway known as the "main" or "western" drive leading from the highway to the gin on King Cotton's property. There is also a field road located on abutting property which intersects State Route 32 just beyond the easternmost boundary of King Cotton. No clearly marked boundary lines exist between the gin property and the adjoining property, but it is uncontroverted that the field road is not on King Cotton's property when it intersects the highway, and that some vehicles used this field road to approach and leave the gin.

Robert Cobb, who drove a tractor trailer rig for Peavy and had been driving trucks for 27 years, had pulled into and out of King Cotton's gin approximately 20 to 30 times prior to October 11, 1986. Cobb testified that he could use the main drive to enter the gin property when his truck was empty, but that when the flatbed trailer was loaded with cotton bales the condition of the main road made it difficult to exit the property without tipping the trailer and losing some bales, and thus he used the field road to leave the gin. Cobb testified, however, that turning left from the field road onto the state road to travel east toward Cordele, his hauling destination, was a difficult maneuver in which he had to pull into the highway across both lanes, stop and back up a few feet to alter the angle of his approach to the eastbound lane, and then start forward again.

The evidence showed that on Saturday, October 11, 1986, Cobb came to the gin in the morning and hauled a load of cotton bales to Cordele. Later that day Cobb returned to the gin for his second haul of the day. After loading his truck, Cobb left the gin premises by the field road. Prior to beginning the turn onto the state road, Cobb noticed the headlights of a vehicle traveling toward him in a westerly direction, but estimated that vehicle was over a mile away, and calculated that he had sufficient time to complete the maneuver safely. The accident occurred when the approaching vehicle, a van driven by Vicki Powers in which the remaining members of the Powers family were passengers, struck the trailer of the truck driven by Cobb, which was positioned across both lanes of the state road.

1. Appellees Powers (hereinafter Powers) have moved this court to dismiss the appeal on the ground that the original notice of appeal was filed on behalf of King Cotton, Inc., rather than King Cotton, Ltd. There has never been any doubt or question that the correct name of King Cotton is King Cotton, Ltd. It is further uncontroverted, however, that although the original pleadings in the trial court referred to King Cotton as King Cotton, Ltd., during the course of the litigation it was referred to variously as "King Cotton," "King Cotton, Inc.," and "King Cotton Co.," among other appellations. In fact, the verdict and judgment below refer to King Cotton, Inc., although there is no question that the intendment of the verdict and judgment was to hold King Cotton, Ltd. liable. " 'It is an elementary rule of pleading that substance, not mere nomenclature, controls.' [Cit.]" *Franklyn Gesner Fine Paintings v. Ketcham*, 252 Ga. 537, 539 (314 SE2d 903) (1984). In view of those facts, we grant King Cotton's motion to amend the notice of appeal to correct the misnomer, and Powers's motion to dismiss is denied. See *Block v. Voyager Life Ins. Co.*, 251 Ga. 162-163 (1) (303 SE2d 742) (1983).

2. At the close of the evidence, the jury was informed by counsel for Powers that he had been instructed by the court to make the fol-

lowing statement to them: "In consideration of the payment of $750,000.00 to the Plaintiffs by Canal Insurance Company, the Plaintiffs have dismissed Robert Cobb and Wayne Peavy as Defendants." In its charge, the trial court instructed the jury that "the settlement of this case by two of the Defendants should not be considered by you as having any effect whatsoever on the question of liability of the remaining Defendant [King Cotton]. The liability of [King Cotton], if any, is a matter for you to determine under the evidence and the charge given you by the Court. The matter of a payment to the Plaintiffs of any amount and the dismissal of those parties from this action is not a matter for consideration by the jury. If you find [King Cotton] liable in this matter, you are to determine in your enlightened conscience the amount of damages to which the Plaintiffs will be entitled without consideration of any amount previously paid to the Plaintiffs." It is evident from various colloquies in the record between counsel and the court that the court and all parties intended that the court instruct the jury to bring in a total damage figure for Powers's injuries, from which the amount paid by the other two defendants would be set off to arrive at the amount of King Cotton's liability.

Before the jury returned its verdict, counsel for King Cotton informed the judge that he foresaw a problem in applying any setoff because there was more than one plaintiff and the jury would be unlikely to award them equal amounts, yet Powers had not informed the court how the settlement was to be allocated among the various plaintiffs. The court did not agree that it would be a problem, saying that it "thought we had resolved the issue of setoff by charging this jury . . . that they were to find the full value of the claims . . . [w]hich, obviously, is a ruling that says that *we are going to set off the $750,000.00 against the full value of the claims.*" (Emphasis supplied.) The jury returned its verdict for Powers in the total amount of $800,000, with $100,000 to Michael Powers, individually, for his own damages; $500,000 to Michael Powers for the value of his deceased wife's life; $125,000 to Michael Powers as Executor under the will of his deceased wife; $50,000 to Erin Powers; and $25,000 to Megan Powers. Thereafter, counsel for Powers requested that the court inquire of the jurors whether they had, in fact, deducted the $750,000 settlement before arriving at the amount of their verdict, and the court refused. The court also refused King Cotton's request that judgment be entered against it immediately for $50,000—the difference between the total amount of the jury's verdict and the settlement—and took the matter under advisement for several hours. When the proceedings resumed, counsel for Powers advised the court that $720,000 of the $750,000 settlement was being allocated to Michael Powers individually. Because the bulk of the $800,000 jury verdict was allocated not to Michael Powers individually but to him

for the value of the life of his deceased wife, and because the jury awarded only $100,000 to Michael Powers individually, the settlement allocation maximized the amount of the jury verdict for which King Cotton was liable.

Approximately one month after the rendition of the verdict Powers solicited affidavits from each of the members of the jury, all of whom averred (in identical language) that their $800,000 verdict against King Cotton was intended to be awarded in addition to the $750,000 settlement. Almost a month after considering these affidavits the trial court entered judgment against King Cotton for the full amount of the jury's verdict and denied any setoff of the settlement, finding in its order that its charge regarding the settlement had been confusing to the jury, and "accepting" the juror affidavits as "curing" the ambiguity in the charge.

The trial court erred by so doing. We agree with the trial court that its charge on the jury's consideration of the settlement was confusing. We can discern no purpose in disclosing to the jury the amount of the settlement if the jury was not to consider the settlement in awarding damages to the plaintiffs. Although it is certainly clear from the record that the intent of the trial court was to instruct the jury to return a verdict for the full amount of damages due Powers *without* setting off the settlement, the language employed by the court was ambiguous and, when coupled with the fact that the jury was informed of the exact amount of the settlement, tended to confuse and mislead the jury into thinking that the amount of the settlement disclosed to them *should* be considered and set off in arriving at their award. See generally *Shugart v. Dept. of Transp.*, 184 Ga. App. 692-694 (1) (362 SE2d 474) (1987). As we conclude that the charge given could have confused a jury of ordinary capacity and understanding, it constituted reversible error. See *Koppar Corp. v. Robertson*, 186 Ga. App. 856, 857-858 (1) (368 SE2d 807) (1988).

We further find, as a matter of law, that this confusion could not have been "cured" by affidavits from the jurors. OCGA § 9-10-9 provides that "[t]he affidavits of jurors may be taken to sustain but not to impeach their verdict," and although Powers and Cobb and Peavy argue (and the trial court found) that the affidavits in the case at bar sustain, rather than impeach, the verdict, it is uncontroverted that the jury was instructed to return a verdict for the *full amount of damages* due Powers without deducting the settlement. Consequently, because the verdict awarding $800,000 to Powers must be read as meaning that in the enlightened conscience of the jury, $800,000 was the *total* amount of damages due to Powers, see *Ford Motor Co. v. Lee*, 237 Ga. 554, 555-556 (2) (229 SE2d 379) (1976), the affidavits from members of the jury (averring that they *deducted* the settlement before making their award) work to impeach, rather than

sustain, the verdict. The trial court's entry of judgment in accordance with the affidavits thus impermissibly added to the jury's verdict. " 'After the dispersal of the jury, the judge has no power either to add to or take from their finding.' [Cit.]" *Ryner v. Duke*, 205 Ga. 280, 283-284 (53 SE2d 362) (1949).

Although King Cotton enumerates as error the trial court's consideration of the juror affidavits, objected to below, it does not specifically enumerate the trial court's charge, and did not object when the charge was given. Because of the magnitude of the error and its inextricable connection with King Cotton's enumeration regarding the affidavits, we find the error in the charge falls within the parameters of OCGA § 5-5-24 (c), which provides that "[n]otwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." We find that this is just such a "substantial error" which is so "blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it." *Hollywood &c. Church v. State Hwy. Dept.*, 114 Ga. App. 98, 100 (3) (150 SE2d 271) (1966).

Accordingly, because the trial court's charge to the jury as to the settlement tended to confuse and mislead the jury, and that confusion could not have been cured by the juror affidavits, this case must be remanded to the trial court for a new trial. See generally *Koppar*, supra at 858 (1); *Barnett v. State*, 178 Ga. App. 685, 686 (1) (344 SE2d 665) (1986).

Upon retrial, either the settlement amount may be disclosed to the jury and the jury instructed to consider that amount in awarding its verdict against the remaining party, or the amount of the settlement must be withheld from the jury and the jury instructed to disregard any dismissals from the action and anything they may have heard regarding settlement and return a verdict for the total amount due each plaintiff as a result of the accident. If the latter option is elected, the court would then, of course, set off the amount of the settlement allocated to each plaintiff from the jury's award. See generally Annot., 94 ALR2d 352.

3. Because it may recur at retrial, we consider King Cotton's contention that the trial court erred by allowing into evidence photographs and testimony showing that subsequent to the accident, King Cotton placed a chain across the entrance to the field road and posted a "No Trespassing" sign. Although King Cotton is correct in stating that it is the rule under Georgia law, and virtually universally, that evidence of repairs, change of conditions, or precautions taken after an injury is not admissible as proof of negligence of the defendant in

not having made the repairs, changed the conditions, or taken the precautions prior to the injury, "[s]uch evidence may, in the proper circumstances . . . be admitted for other purposes, as for example to show defendant's ownership or control of the premises . . .; but, if so admitted, the jury should be cautioned as to the limited purpose for which it is received and admonished not to consider it as evidence of negligence or as an admission thereof. [Cits.]" *Stuckey's Carriage Inn v. Phillips*, 122 Ga. App. 681, 687 (1) (178 SE2d 543) (1970). See also *Brooks v. Cellin Mfg. Co.*, 251 Ga. 395, 396-397 (306 SE2d 657) (1983).

4. In the cross-appeal, which is conditioned on the grant of a new trial, Powers contends the trial court erred by excluding from evidence on relevancy grounds documents showing a commercial driveway permit application from King Cotton and subsequent permit issued by the Georgia Department of Transportation (DOT) pursuant to OCGA § 32-6-131, and a conveyance of access rights from King Cotton's predecessor in title granting to the DOT all rights to exit the gin property anywhere along State Route 32 at any point other than the main driveway (thus essentially relinquishing its right to access the highway *except* at the main drive). Powers contends the traveling public at large are third party beneficiaries of these contracts, and as such, Powers was harmed by the failure of King Cotton to honor the provisions of the conveyance, and by its failure to repair the main driveway according to the terms of the permit. We do not agree that Powers was a third party beneficiary of the agreements or the permit. It is well established that the mere fact that a person would benefit from the performance of a contract does not make him a third-party beneficiary. Rather, a third party beneficiary contract is one in which the promisor engages to the promisee to render some performance to the third person. *Stewart v. Gainesville Glass*, 131 Ga. App. 747, 752-753 (206 SE2d 857) (1974).

Moreover, these documents, which are included in the record, appear to have been executed before the gin began operating and were executed to grant King Cotton's predecessor in title permission to construct a dirt driveway to effect ingress and egress to the property. We fail to see the relevance of these documents to the issues in the case at bar. Should the evidence at retrial be essentially the same, the documents would be similarly irrelevant, and it would not be error to exclude them. " 'Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded.' [Cit.]" *Brookhaven Assoc. v. DeKalb County*, 187 Ga. App. 749, 750 (1) (371 SE2d 231) (1988).

5. Powers's second enumeration in the cross-appeal is rendered moot by our denial of the motion to dismiss the appeal. See Division 1, supra.

6. We agree with Powers that a jury question exists as to whether King Cotton's actions constituted a nuisance under the circumstances of this case. Evidence proffered at trial which should have been admitted (and, upon proper tender, should also be admitted at retrial, see Division 3, supra) presented a jury question regarding control by King Cotton of the field road. Other evidence, however slight, was adduced to show that King Cotton, by the arrangement of cotton modules on its premises, may have encouraged drivers of tractor trailers to exit its premises via the field road. Assuming evidence is adduced at trial that King Cotton's behavior was continuing, and that King Cotton had knowledge that use of the field road by loaded tractor trailer trucks was unsafe but failed to act to correct its behavior within a reasonable time, that evidence would authorize a verdict for Powers under the theory of nuisance. See generally *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (256 SE2d 782) (1979). Accordingly, a directed verdict in favor of King Cotton on the issue of nuisance would not be proper.

7. Powers finally contends the trial court erred by granting a directed verdict to King Cotton on the cause of action alleging negligence in failing to prevent Cobb from leaving its premises when it knew or should have known that he was a danger to others because he was intoxicated. We do not agree. Even assuming there was a jury question as to whether Cobb was noticeably intoxicated (one former employee of the cotton gin testified that he smelled alcohol around Cobb, although both the foreman who checked Cobb out and Cobb's employer denied this), we do not agree with Powers that King Cotton had a duty to the world to prevent Cobb from driving on the public roads because it suspected he might not have been a safe driver. Powers concedes there is absolutely no suggestion that King Cotton *provided* alcohol to Cobb so as to bring it within the purview of OCGA § 3-3-22 or *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716) (1985), and we know of no other statute or case law imposing a duty on a business to prevent its licensees from exercising their right to leave the business premises under such circumstances. Further, contrary to Powers's argument, the evidence did not reveal *authority* on the part of King Cotton's employees to prevent Cobb from leaving the premises. Employees testified only that they believed they had authority to prevent Cobb from loading his truck with cotton bales if they considered his doing so deleterious to King Cotton's property or interest. Powers introduced no evidence, nor has he directed this court to any evidence admitted, which suggested that King Cotton's employees had the authority to prevent Cobb from leaving or from driving a truck not belonging to King Cotton upon the public highways. Accordingly, under the evidence adduced at trial, the trial court properly granted King Cotton's motion for a directed verdict on this issue.

*Judgment reversed and Case No. 77641 remanded. Judgment affirmed in part and reversed in part and Case No. 77660 remanded. Carley, C. J., concurs. Deen, P. J., concurs specially.*

DEEN, Presiding Judge, concurring specially.

Although I concur fully in the result of the captioned case, it is appropriate to observe that, in Division 4 of the majority opinion, appellee Powers would most accurately be characterized, under generally recognized legal principles, as an "incidental third-party beneficiary" as distinguished from an intended beneficiary of the agreements and permit. Powers was not a third-party beneficiary of the agreements or the permit in the sense that he would have standing to seek enforcement of the agreements and permit. The fact that he would benefit from the performance of a contract makes him, at best, an incidental beneficiary. See Corbin on Contracts, Vol. 1 (1952), § 779C; Calamari & Perillo, Contracts (1970), p. 380 et seq. Otherwise, I concur fully with the majority opinion.

DECIDED MARCH 2, 1989 —
REHEARING DENIED MARCH 21, 1989 —

*Perry, Walters & Lippitt, C. Richard Langley*, for appellant.
*Cannon & Meyer von Bremen, William E. Cannon, Jr.*, for appellees.