A93A1095. ALLISON v. PATEL.
(438 SE2d 920)

BEASLEY, Presiding Judge.

Plaintiff Allison, widow of defendant Patel's patient, appeals from a defendant's verdict and judgment in a medical negligence claim. Motion for new trial was denied. Two subjects of evidence and argument, i.e., settlements with other defendants and the doctor's jus-

tification for absence, and the jury charges related to each, are at issue.

On June 30, 1986, Allison went to defendant, vascular surgeon Manhar Patel, complaining of pain and swelling of his lower right leg. Defendant was on the active staff of AMI Griffin Spalding Hospital and was the only vascular surgeon in Griffin. Defendant conducted an office examination and recommended that Allison be admitted to the hospital immediately for further tests, specifically, an arteriogram.

The arteriogram procedure was performed by radiologist Hayes on July 3, the delay being occasioned by the patient's respiratory disease. Dr. Hayes had a policy of not performing the procedure unless defendant was available to treat any complications, even if someone else had ordered the particular test. Hayes did this because only a vascular surgeon such as defendant could treat some of the possible complications resulting from an arteriogram.

Dr. Hayes notified defendant when the procedure had been completed. She perceived no need to request that defendant examine Allison. Thereafter, defendant received a telephone call from his brother-in-law, who told him that defendant's mother-in-law had slurred speech, was non-responsive, and was dying. Defendant knew she had diabetes and a heart condition, so he contacted a doctor in Griffin and went with his wife to Jonesboro to see about the mother-in-law. Once there, defendant resumed contact with the doctor, an internist, and came back to Griffin with his mother-in-law that night to take her to the doctor's office. He remained with her to reassure her (she was visiting from her home in India) and had dinner with the family. During the time defendant was away he could not be contacted by the hospital, Dr. Duke or Dr. Hayes, and he did not attempt to call the hospital because he knew Dr. Duke was covering him, which was in fact true. He learned the next morning that Allison had complications.

Dr. Duke and defendant had previously discussed what to do in case a vascular emergency arose when defendant was unavailable. The covering arrangement between Dr. Duke and defendant allowed either of them, without contacting the other, to take time off or leave town and have the other cover for him. The two had agreed that vascular emergency patients would be transferred to the location of doctors recommended by defendant. A patient could be put in the hands of another vascular surgeon in an Atlanta hospital within one to two hours at any time. Dr. Duke was qualified to handle 90 to 95 percent of complications arising from an arteriogram. Only defendant could perform the procedure necessary to treat Allison's thrombosis, and thus use of the transfer plan was necessary. The particular complication suffered by Allison occurred in approximately one out of a thousand administrations of an arteriogram.

When Allison returned to his hospital room following the arteriogram, he complained of severe pain in his right leg. He was given pain medication, but the severe pain continued. Around 5:30 p.m., a hospital nurse contacted general surgeon Duke and informed him that Allison's right leg was cold and pulseless. Dr. Duke diagnosed a thrombosis, believed that a vascular surgeon was needed, and determined that Allison would have to be transferred to another facility because defendant was not available. Allison's wife gave her permission for the transfer.

At approximately this same time, Dr. Hayes came to see Allison, either because nurses contacted her or as a matter of course. She, too, diagnosed a thrombosis in Allison's right leg and attempted unsuccessfully to locate defendant. She learned that Dr. Duke was covering for defendant and received a call from Duke. Both physicians agreed that a vascular surgeon was needed immediately.

After attempting for over an hour to locate another vascular surgeon, Duke located a cardiovascular surgeon at Emory University Hospital in Atlanta who would take Allison. The county ambulance was unable to transport Allison and a Life Flight helicopter flew him to Georgia Baptist Hospital, from which he was taken to Emory.

Allison arrived at Emory about 10:00 p.m., and surgery commenced at 12:10 a.m. He received several thrombectomies over a period of a month in an attempt to avoid amputation of his right leg. At the end of that time, the leg was amputated above the knee. While still in intensive care, Allison suffered further complications resulting in cardiac failure and his death on September 4.

Plaintiff filed suit against Patel, the medical institutions, other physicians, and nurses involved in her husband's treatment, as joint tortfeasors even though there was not a concert of action. See *Posey v. Medical Center-West*, 257 Ga. 55 (354 SE2d 417) (1987). All defendants except Patel were voluntarily dismissed before trial. As to Dr. Hayes and as to the hospital in Griffin and its nurses, plaintiff agreed to releases and indemnity in consideration of $125,000 and $195,000 respectively, a total of $320,000.

Each of the two releases was expressly limited to the party or parties to whom it was given and stated that plaintiff would seek further recovery from others until full satisfaction was obtained. Plaintiff agreed to indemnify each in the event contribution was sought from any other defendant and to hold each harmless in the event of other suits based on this occurrence. Each agreement expressly provided that it was in settlement and compromise and that the releasee denied liability. Consent judgments were entered, stating that plaintiff sought further damages against other parties so as to achieve full satisfaction.

The plaintiff specified two grounds of professional negligence

against defendant. The first alleged that ordering and performing the arteriogram was a deviation from the standard of care in that it was not proper to give such a test at that time. The second alleged that defendant deviated from the standard of care by leaving the hospital and failing to make alternative arrangements, thus making himself unavailable to treat any complications resulting from the arteriogram.

Plaintiff filed a motion in limine to exclude evidence of (1) the fact of settlement of her claims against Hayes and the hospital and nurses; (2) the fact of dismissal of the claims against Duke and the other doctors involved; and (3) any amounts paid by reason of the various settlements. She urged that if the court allowed the jury to learn of the settlements, it not permit the jury to know the amounts. In the consolidated pretrial order, which did not specify the verdict form, plaintiff objected to evidence of the amount of settlements and sought a verdict for the full amount of damages, which "the court" could reduce in the judgment by the total amount of the settlements ($320,000). The court denied the motion.

During trial, over objection, defendant introduced the release and indemnity agreements and referred to the settlements and amounts, through the testimony of plaintiff, inferring they indicated negligence of the parties who settled. In defendant's closing argument, he drew attention to the settlements and amounts and connoted liability.

Plaintiff in her motion in limine also requested the court to exclude "any reference or evidence as to reason or alleged justification of Dr. Patel for leaving Griffin and otherwise being unavailable following arteriogram ordered on Mr. Allison." This aspect of the motion was denied, too, and such evidence was presented.

At the outset of the charge to the jury, the court reminded it that this was a trial against Dr. Patel. The extensive charges regarding the two negligent acts alleged and the standard of care required of a physician such as Dr. Patel were related to him alone. The court charged that defendant denied negligence and denied proximate cause if he was negligent. The court did not charge that the doctor "defended" on the basis that plaintiff had already been fully compensated.[1]

As to proximate cause, the court charged that where separate and distinct but concurrent acts or omissions of negligence of different persons are the proximate cause, "compensation for the entire loss" may be recovered "from either or both of the parties responsible." The court further charged that if defendant's negligence joined with that of others, the jury need not determine relativity because plaintiff could recover the full amount of damages against any one of them.

---

[1] In *Ford Motor Co. v. Lee*, 137 Ga. App. 486, 490 (10) (224 SE2d 168) (1976), it was suggested that defendant plead the amount of the covenant as a defense, but that would be inappropriate.

The court also charged on intervening acts and their breaking of the causal connection, and on other causes such as unrelated infirmities.

Thereafter, the court addressed damages, first instructing the jury that it was not to consider such unless and until it first found defendant liable, that instructions on damages are not to be taken as a suggestion of liability or damages, and that damages in a fair and reasonable and just amount are given as compensation. It then charged:

"If you find the defendant, Dr. Patel, liable in this matter, you are to determine in your enlightened consciences the total amount of damages to which the plaintiff would be entitled without consideration of any amount previously paid to the plaintiff. It is only after the total amount of damages is determined that the amount of any payment by any other tortfeasor will act as a satisfaction and then only to the extent of such payment." (This portion of the charge was requested by plaintiff, citing *Ford Motor Co. v. Lee*, 237 Ga. 554, 556 (2) (229 SE2d 379) (1976), and *Atlantic Coast Line R. Co. v. Ouzts*, 82 Ga. App. 36, 49 (60 SE2d 770) (1950) but the request was submitted "subject to and without waiver of objection to evidence of amount of settlement being disclosed to jury." Plaintiff had insisted from the outset that the jury not receive evidence of settlements and amounts and only determine the entire amount of damages.)

The court continued: "I charge you that an injured party is not entitled to a double recovery for his or her damages. In this regard, if you find that the money paid in the sum of $320,000 heretofore received by the plaintiff from former defendants Dr. Knowles and from Griffin AMI Hospital and others fully compensated the plaintiff for all damages received by her as a result of the occurrences complained of in this action, then you would not be authorized to find for the plaintiff and against the defendant in this case any additional sums. On the other hand, if you find that plaintiff has not been fully compensated for her injuries, then to the extent you find the plaintiff's injuries were caused by the defendant in this case and are in excess of the compensation originally paid to the plaintiff by the other defendants, then a verdict against the defendant would be authorized, but you would — but would be reduced by you by the amount which you find the plaintiff has already been compensated." (This portion of the charge was requested by defendant, citing *Knight v. Lowery*, 228 Ga. 452 (185 SE2d 915) (1971) (overruled in *Maxey v. Hosp. Auth. of Gwinnett County*, 245 Ga. 480, 482 (265 SE2d 779) (1980); *Williams v. Physicians &c. Hosp.*, 249 Ga. 588, 592 (292 SE2d 705) (1982)); *Sims v. Bryan*, 140 Ga. App. 69 (230 SE2d 39) (1976); *Rowland v. Vickers*, 233 Ga. 67 (209 SE2d 592) (1974).) Thereafter charges on the measure and items of damages were given.

The court did not give the jury a verdict form but asked for a

general verdict and that it be "simple so that even the lawyers can't misunderstand it." After the jury charge, plaintiff's attorney asked that a proposed verdict form to show specific items of damage be given, but defendant objected and wanted at least a $320,000 "setoff" to be provided for on the form if each item of damage was to be separately set out. The court denied plaintiff's request, and a general verdict in the jury's own handwriting was returned "in favor of defendant on all, both counts."

1. In her first and second enumerations of error, plaintiff contends that the trial court erred in allowing evidence and argument of the fact and amount of her settlements with co-defendants and in its correlative charge to the jury. In the first, she urges that because the fact and amount of the settlements were not in dispute and because she had agreed to a verdict reduction in that amount, any evidence or argument concerning the settlements was irrelevant and prejudicial and violated the policy of encouraging settlement.

In the second, plaintiff contends that the charge quoted above tended to confuse the jury because it reversed the issues of liability and damages in two manners. As to liability, the charges invited the jury to consider the issue of damages first and then, if the damages constituted full compensation, defendant would be exculpated and there would be no need to consider defendant's liability. As to damages, it invited the jury to focus on the amount of the settlement and decide if this was "full compensation" and then, if it was not, award plaintiff the difference between that amount and an amount it found to be "full compensation."

The case was tried on two alleged acts of negligence, i.e., ordering an arteriogram and not being available to treat complications which might arise when it was performed. The evidence related to two separate acts, the parties argued them as distinct and sequential events, and the court charged the jury that there were two, carefully delineating each. The jury's verdict, that it found "in favor of the defendant on all (both) counts," indicates that it found defendant was not negligent or did not proximately cause the patient's death, in either of the two ways alleged. It appears, although not conclusively, that the jury did not reach the question of damages. Thus, the following principle does not apply: "Where an error in the giving of a charge or in the admission or exclusion of evidence relates only to the issue of damages, and the jury finds the defendant not liable, the error is harmless because it does not affect the verdict." *Pouncey v. Adams*, 206 Ga. App. 126, 127 (424 SE2d 376) (1992).

Even if it did, the issue of whether this evidence erroneously affected the question of liability is not moot.

Plaintiff urges that the matter of settlements was irrelevant to, but infected, the issue of Dr. Patel's liability, and that the jury may

have considered it as evidence that the released parties are the ones responsible for the injuries and that defendant should be exculpated. Despite what is in the release document, the fact that a co-defendant is paying a substantial sum could appear to the jury as an unstated admission of liability of the actual tortfeasor who buys dismissal from the lawsuit. *Brewer v. Payless Stations*, 412 Mich. 673 (316 NW2d 702, 704) (2)) (1982). Plaintiff's very contention is that the treatment of damages, i.e., the introduction of the settlements and amounts and the court's instruction, affected the issue of liability by causing the jury to return its verdict in favor of the defendant based on plaintiff's earlier recovery.

Because the verdict was general, neither party having requested that liability and damages be separate items in the verdict, we do not know for certain whether the jury found defendant not liable because of lack of negligence or lack of proximate cause, or even whether it found him such but that plaintiff had been fully compensated. Another possibility is that its finding of no negligence or no proximate cause was influenced by its knowledge that others in the chain had paid substantial sums. Hence, we cannot avoid the questions of (a) whether the admission of the evidence or the charge was error and, (b), if so, whether the error was harmful.

(a) "Evidence must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded." OCGA § 24-2-1. The issues on trial were whether Dr. Patel committed acts of negligence as alleged and, if so, what were the damages resulting, for which plaintiff should be compensated. The fact that plaintiff settled with other alleged tortfeasors who participated in the care and treatment of the patient before his death is not relevant to the issue of whether Dr. Patel was negligent. As adopted in *Posey*, supra at 59: "A valid release of one tortfeasor from liability for a harm, given by the injured person, does not discharge others for the same harm, unless it is agreed that it will discharge them." Nor was it relevant to the amount of damages, because as stated in *King Cotton, Ltd. v. Powers*, 190 Ga. App. 845, 848 (2) (380 SE2d 481) (1989), "We can discern no purpose in disclosing to the jury the amount of the settlement if the jury was not to consider the settlement in awarding damages to the plaintiffs."

(b) There is a danger that the question of total damages will be influenced by the fact that plaintiff received $320,000. The jury might consider it a gauge. It might be inclined to assign percentages of liability and to consider relative fault. It might conclude, for example, that Dr. Hayes was equally at fault so Dr. Patel should not have to pay more than she did. That would lead the jury to award $125,000 against Dr. Patel, automatically resulting in a total damages figure of $445,000. But Dr. Hayes' liability is not at issue, and her payment of

$125,000 is not a measure of her liability; it should not influence in the least the jury's determination of the total damages. Her settlement may have been arrived at in part by extraneous factors such as the desire to avoid the expense and time required by litigation.

Nor should it influence the jury to determine that some liability must be attached to the payments of $320,000, so those defendants and not Dr. Patel were at fault. Yet plaintiff has no burden to prove they were or they were not; it is immaterial to whether defendant on trial was at fault, and the jury should not be permitted to speculate that the fact of settlement with others affects the liability of the defendant.[2] As quoted in *Posey*, supra at 58: " 'a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration.' Prosser, [Torts 332 (5th ed. 1984)]." We cannot discern as a matter of law that the jury did not take the fact or amounts of settlement into account in determining liability or damages; we cannot discount prejudice.

The evidence was irrelevant, and it was error to admit it. It was also harmful for at least the reasons described above. Thus we need not address the jury charges.

2. The desire to inform the jury why the trial does not encompass the alleged negligence of the other defendants shown on and in the pleadings (which the jury will see) can be easily satisfied without evidence or charge on settlement and its effect on damages. The court can simply instruct the jury that it is not to be concerned with the liability of any other participant in the incident or how much they will be required to pay if anything; that they are to focus only on the liability of the defendant on trial and, if they find him liable, the total amount which will compensate plaintiff for the injuries inflicted. The court can inform the jury that this will not result in plaintiff's possibly recovering twice, that other mechanisms will prevent it.

Then, when the verdict is returned, the court can reduce the judgment by the amount of any settlements. The added advantage is that the parties can check the calculations of the court but cannot check those of the jury on a general verdict or even be assured they performed that task. See *King Cotton, Ltd.*, supra.

In *Blossman Gas Co. v. Williams*, 189 Ga. App. 195, 200 (2) (375 SE2d 117) (1988) (non-precedential), the court held it was not error to exclude from evidence the covenants never to sue, which under OCGA § 13-4-81 are equivalent to releases of the covenanted parties. In *Blossman*, the *court's* reduction of the verdict and allowance of defendant's discussion of evidence of others' wrongdoing, as the sole

---

[2] Contribution among defendants is not involved because it does not relate to the relationship between injured party and tortfeasors, or the claim of the injured party against the tortfeasor, but rather to the relationships and claims among the tortfeasors.

proximate cause of harm, obviated the risk of double recovery and thus no reversible error was found. The court cited *Ford Motor Co.*, supra, 237 Ga. at 555-556, Division 2, and *Malone v. City of Rossville*, 107 Ga. App. 271, 272 (1) (129 SE2d 563) (1963). As noted in *Blossman*, payments to plaintiff under the covenants operate pro tanto upon any judgment against the non-covenanting defendant. *American Chain &c. Co. v. Brunson*, 157 Ga. App. 833, 837 (278 SE2d 719) (1981). Court, rather than jury, reduction was approved in *Weaver v. Ross*, 192 Ga. App. 568, 571 (2) (386 SE2d 43) (1989).

The covenants and the payments under them are not *defenses* for the non-covenanting tortfeasor. They govern only how much of the potential judgment the tortfeasor will have to pay to plaintiff. Others' post-episode covenants do not relieve the defendant of liability, although the tortfeasor's showing that the others involved in the episode were at fault instead of himself, *would* be a defense.

The *Ford Motor Co.* case demonstrates the danger of considering the covenants as a defense and allowing them in evidence and instructing the jury not to consider it. This practice creates an inconsistency and hazards the possibility that the jury will misunderstand. The panel of this court which dealt with the problem was not convinced that the jury understood correctly,[3] whereas the majority of justices held that it did.[4] There is no reason to becloud what otherwise is clear, by injecting matter which casts doubt on the jury's verdict. See also *Barnes v. Wall*, 201 Ga. App. 228 (2) (411 SE2d 270) (1990) (physical precedent but cited in *Pouncey*, supra).

*King Cotton, Ltd.*, supra, is another example of the confusion which is created when the fact and amounts of settlement are introduced into the jury's deliberations. A new trial was required because of the ambiguity of the verdict, which was caused by the introduction of settlement evidence and the court's instruction to disregard it (although the court did not *strike* it). Further potential confusion or erroneous consideration of settlement by the jury was invited by this court's direction that upon retrial, the trial court *could* allow disclosure of settlement and amount to the jury. Id. at 849. Two options were offered. The first was that the settlement amount may be disclosed and the jury instructed to consider it in awarding a verdict against the remaining party. The second was that the amount must be withheld and the jury instructed to disregard dismissal of parties and return a verdict for the total amount due as a result of the negligence. "[T]he court would then, of course, set off the amount of the settlement allocated to each plaintiff from the jury's award. See gen-

---

[3] *Ford Motor Co. v. Lee*, 137 Ga. App. 486, supra.
[4] *Ford Motor Co. v. Lee*, 237 Ga. 554, supra.

erally Annot., 94 ALR2d 352." Id. at 849. Alternative methods of handling reduction are also described in *Barnes*, supra at 229 (2), but they all still involve the jury's knowledge of the *fact* of settlement. Accord *City Express Svc. v. Rich's, Inc.*, 148 Ga. App. 123, 125 (4) (250 SE2d 867) (1978); *Ford Motor Co. v. Lee*, supra at 237 Ga. 556 (2).

Although the second option in *King Cotton, Ltd.* is more preferable, it does not eliminate the irrelevant evidence altogether. This is necessary to avoid the effect it might have on the finding of liability vel non of the only party whose liability is at issue, as well as the effect it might have on the amount of damages to which plaintiff is entitled. The fact of settlement itself should be excluded, for as the court noted, the jury would be instructed to disregard it anyway.

3. In her third enumeration of error, plaintiff contends that the trial court erred in admitting evidence of "justification" for defendant's alleged abandonment and in charging the jury that: "Before a physician can abandon or withdraw from a case without liability therefor, he must either give reasonable notice or provide a competent physician in his place. If a physician abandons a patient without justification and giving such notice or providing a competent physician in his place, it is a failure to exercise that care required by law. . . ." She argues that only facts concerning the applicable standard of care should have been admitted, and that inasmuch as justification is not a defense to a physician's abandonment of a patient, evidence concerning defendant's reasons for leaving was irrelevant.

"Abandonment of a patient is a tortious act. [Cit.] 'Before a physician can abandon or withdraw from a case without liability therefor, he must either give reasonable notice or provide a competent physician in his place . . . "A physician who leaves a patient at a critical stage of the disease, *without reason*, or sufficient notice to enable the party to procure another medical attendant, is guilty of a culpable dereliction of duty." ' [Cit.]" (Emphasis supplied.) *Pritchard v. Neal*, 139 Ga. App. 512, 514-515 (229 SE2d 18) (1976). Physicians are liable for "unwarranted" abandonment of the patient or for abandoning the patient "without reason." See *Overstreet v. Nickelsen*, 170 Ga. App. 539, 541 (2) (317 SE2d 583) (1984); *Carroll v. Griffin*, 96 Ga. App. 826, 827 (2) (101 SE2d 764) (1958); *Norton v. Hamilton*, 92 Ga. App. 727, 731 (89 SE2d 809) (1955). See also *Kenney v. Piedmont Hosp.*, 136 Ga. App. 660, 663 (2) (222 SE2d 162) (1975).

The standard thus provides opportunity for defendant physicians to offer evidence to show why the leaving of the patient was with reason or warranted, that is, with justification. In deciding whether a physician has met the requisite standard of care, "the jury may consider *all* the attendant facts and circumstances which may throw light on the ultimate question." *Word v. Henderson*, 220 Ga. 846, 849 (142

SE2d 244) (1965). It was not error to permit the jury to hear defendant's justification for his absence or to charge the jury in this regard.

4. Plaintiff's fourth and final enumeration of error contends that the trial court erred in failing to give her request to charge the jury regarding the physician's duty to continue to remain in attendance as long as the patient requires attention and care. The enumeration, unsupported by either argument or authority, is considered abandoned. Court of Appeals Rule 15 (c) (2). *Melton v. Gilleland & Sons*, 176 Ga. App. 390 (1) (336 SE2d 315) (1985).

*Judgment reversed. Cooper and Smith, JJ., concur.*

DECIDED NOVEMBER 30, 1993 —
RECONSIDERATION DENIED DECEMBER 15, 1993 — ▮▮▮▮▮▮

*Donald R. Andersen*, for appellant.

*Beck, Owen & Murray, Samuel A. Murray, Bradford W. Thomas*, for appellee.